UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK W. GARNER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:15CV00733 AGF |
| | ) |
| UNION PACIFIC RAILROAD CO., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on motion (Doc. No. 13) of Plaintiffs Mark Garner and Penny Richardson to remand this case to state court, and the motion (Doc. No. 18) of Defendant Union Pacific Railroad Company ("Union Pacific") for leave to conduct limited discovery on jurisdictional issues relating to the motion to remand. For the reasons stated below, the Court will deny both motions.

## BACKGROUND

This case is a wrongful death action regarding the collapse of a communications tower on March 25, 2014, in Pottawatomie, Kansas, which killed decedent Seth Garner and his co-worker Martin Powers. At the time of the collapse, decedent was employed by Defendant Wireless Horizon, Inc. ("Wireless"), which was allegedly a subcontractor working on behalf of Union Pacific to dismantle the tower. On March 27, 2015, Plaintiffs, decedent's mother and father, brought suit in state court against Union Pacific, Wireless, Sabre Industries, Inc., and Sabre Communications Corp. (the latter two,

collectively "Sabre"),[1] as well as against five John Doe Defendants, not yet identified, who were allegedly co-employees of decedent and Garner.  The complaint states claims for negligent supervision, against Union Pacific (Count I); negligent hiring/selection, against Union Pacific (Count II); strict liability, against Sabre and Union Pacific (Count III); negligent design, against Sabre and Union Pacific (Count IV); co-employee liability, against the John Doe Defendants (Count V); and conduct with the specific purpose of injury, against Wireless (Count VI).

On May 8, 2015, Union Pacific removed the action to this Court based on 28 U.S.C. § 1332(a) diversity jurisdiction.[2]  The notice of removal alleged that jurisdiction was proper because the amount in controversy exceeds $75,000, and because Plaintiffs are residents of Missouri, Union Pacific is a Delaware corporation with its principal place of business in Nebraska, Sabre Industries, Inc. is a Delaware corporation with its principal place of business in Texas, and Sabre Communications Corp. is an Iowa corporation with its principal place of business in Iowa.  In its notice of removal, Union Pacific concedes that Wireless is a Missouri corporation with its principal place of business in Missouri, but it argues that the citizenship of Wireless does not destroy diversity and should be disregarded, in that it was fraudulently joined.  In support of this assertion, Union Pacific argues that there exists no basis in fact or law for the Court to exercise jurisdiction over Plaintiffs' sole claim against Wireless, in that this claim is

---

[1] Plaintiffs allege that Sabre designed, tested, manufactured, marketed, sold, and/or constructed the tower in question with Union Pacific.

[2] Sabre consented to the removal by Union Pacific, but Wireless, which has yet to appear before the Court, did not.  Union Pacific contends that it does not need the consent of Wireless to remove because Wireless was fraudulently joined.

2

subject to the exclusive jurisdiction of either the Missouri or Kansas workers' compensation systems.  In the alternative, Union Pacific argues that the joinder of Wireless was fraudulent in that Plaintiffs fail to state a claim against it as a matter of law.  Union Pacific argues that Plaintiffs have not pleaded sufficient facts demonstrating that Wireless acted "intentionally" or "purposely" in causing the death of decedent and his co-worker.

On June 8, 2015, Plaintiffs moved to remand this case to state court due to a lack of complete diversity between Plaintiffs and Defendants.  Plaintiffs argue that Wireless was not fraudulently joined under Missouri's workers' compensation statute.  First, Plaintiffs contend that the exclusivity provision of Missouri's Workers' Compensation Act is not a jurisdictional bar, but rather, an affirmative defense which must be raised by Wireless, as employer of decedent.  As Wireless has not raised this defense, Plaintiffs contend that it has been waived and that Union Pacific cannot raise the defense in its place.  Additionally, Plaintiffs argue that even if workers' compensation exclusivity has been implicated, the proper remedy is to stay the case pending the determination by the workers' compensation commission whether the tower collapse was accidental or not, and if the collapse is found not to have been a total accident, Plaintiffs may then proceed with their intentional tort claim against Wireless.  Plaintiffs argue that because this Court cannot make such a determination at this stage, Plaintiffs have a reasonable basis in fact and law supporting Count VI, and that therefore Wireless was not fraudulently joined and the case should be remanded for lack of complete diversity.  Plaintiff further contends that the complaint contains sufficient factual allegations to state a claim against Wireless.

3

In response to Plaintiffs' motion to remand, Union Pacific argues that Kansas law, rather than Missouri law, should control Plaintiffs' claim against Wireless, as that is where the incident occurred. Union Pacific argues that under Kansas law, workers' compensation is the exclusive remedy for even intentional tort claims, and serves as a total jurisdictional bar to tort recovery.[3] Moreover, Union Pacific argues that even if Missouri law applies, Missouri case law makes clear that workers' compensation is the exclusive remedy for Plaintiffs' claim against Wireless. Union Pacific argues that the availability of the workers' compensation exclusivity defense hinges on whether the incident at issue was accidental or intentional, an issue which is within the sole authority of the workers' compensation commission to decide. As in its notice of removal, Union Pacific also argues that, workers' compensation exclusivity notwithstanding, the complaint fails to state an intentional tort claim against Wireless because it does not allege sufficient facts in support, which constitutes a separate basis to establish fraudulent joinder.

Alternatively, Union Pacific asks the Court to stay its decision on Plaintiffs' motion to remand pending limited jurisdictional discovery. Union Pacific argues that it believes that Plaintiffs have filed a workers' compensation claim, but that it does not know whether such a claim was filed in Missouri or Kansas, or the status of such claim. Union Pacific argues that because a workers' compensation claim may have already

---

[3] Union Pacific notes that Plaintiffs do not address Kansas law whatsoever in their motion to remand, and speculate that Plaintiffs may be assuming that Missouri law applies because they may have filed a workers' compensation claim in Missouri. As discussed below, Plaintiffs deny that they have filed a workers' compensation claim against Wireless, and there is no evidence in the record indicating that they have done so.

determined whether the incident was accidental or intentional, such information could be dispositive of whether Plaintiffs can state a claim against Wireless, or whether Wireless was fraudulently joined. Thus, Union Pacific contends that jurisdictional discovery into this issue is appropriate.

Contemporaneously with its response brief, Union Pacific filed a motion to stay the case and allow Union Pacific limited jurisdictional discovery. In addition to reiterating its belief that Plaintiffs may have an existing workers' compensation claim, Union Pacific argues that Plaintiffs may have reached a settlement or other agreement with Wireless, given that Wireless has not entered an appearance in this case, despite having been served several months ago.[4] Union Pacific argues that both of these issues are critical to the determination of whether Plaintiffs have stated (and still have) a viable claim against Wireless, and in turn whether the citizenship of Wireless should be considered with respect to the Court's diversity jurisdiction in this case.

In reply to Union Pacific's brief in opposition to their motion to remand, Plaintiffs argue that in Missouri, workers' compensation exclusivity is not a jurisdictional bar, but rather a waivable affirmative defense which must be pled by Wireless. As Wireless has not raised it, Plaintiffs contend that their tort claim against Wireless can proceed normally. Plaintiffs argue that they have asserted sufficient facts to state such a claim against Wireless, and that even though the claim could ultimately fail, it is not so clearly meritless as to show fraudulent joinder. Finally, Plaintiffs assert that they have not filed

---

[4] In its notice of removal, Union Pacific states that Wireless was served in this matter "on or about April 7, 2015." (Doc. No. 1 at 2.)

5

any workers' compensation claim against Wireless relating to the death of decedent, in Missouri or Kansas.

In response to Union Pacific's motion for jurisdictional discovery, Plaintiffs reiterate that they have not filed any workers' compensation claim, and argue that the requested discovery is unnecessary. Plaintiffs do not respond to the assertion of Union Pacific that Plaintiffs may have reached a settlement or other agreement with Wireless concerning this case.

On August 20, 2015, the Court ordered the parties to submit supplemental briefing regarding whether Missouri law or Kansas law controls Plaintiffs' claim against Wireless, and how this choice of law impacts Plaintiffs' motion to remand. Plaintiffs, Sabre Communications Corp., and Union Pacific all submitted briefs in response to this Order.

Plaintiffs construe the question as a conflict between the workers' compensation laws of Missouri and Kansas, which Plaintiffs argue is important because Missouri contains an exception to workers' compensation exclusivity in cases where injury results from intentional acts of the employer, while Kansas law contains no such exception.[5] Plaintiffs argue that, under Missouri's choice of law rules, Missouri's workers' compensation statute will control because it contains a statutory directive that Missouri law shall apply to "all injuries received and occupational diseases contracted outside of this state under contract of employment made in this state." Doc. No. 27 at 4 (quoting Mo. Rev. Stat. § 287.110(2)). Plaintiffs contend that, though the incident occurred in

---

[5] It is undisputed by the parties that Missouri law contains an exception to workers' compensation exclusivity, while Kansas law does not contain such an exception.

6

Kansas, Wireless and decedent entered into their employment contract in Missouri, and therefore Missouri law should control.[6] Alternately, Plaintiffs argue that under the "most significant relationship test" followed by Missouri courts, Missouri law should still control because the conduct causing the injury (the decisions made by Wireless) occurred at least partly in Missouri, Wireless and decedent are both Missouri citizens, and the relationship between these two parties is based in Missouri. Plaintiffs argue that under either analysis, Missouri law should control and the case should be remanded to state court.

Union Pacific and Sabre construe the conflict as one between the wrongful death laws of Missouri and Kansas. They argue that under Missouri law, the default rule is that the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties. These Defendants argue that there is no reason to disturb the presumption that Kansas law controls, and that in any event, Kansas has the most significant relationship to this case, in that the injury occurred in Kansas, the conduct causing the injury (the deconstruction of the tower) occurred in Kansas, and the relationship between the parties in this case is centered in Kansas, where the deconstruction was to occur. Moreover, Union Pacific and Sabre argue that Kansas has a stronger interest in its law governing this case than Missouri does because the incident and the conduct leading up to it both occurred within its borders. Finally, these Defendants argue that because Kansas law

---

[6] Plaintiffs have not submitted any evidence regarding decedent's employment contract, and no such facts were pleaded in their complaint.

applies, the Court must recognize the exclusivity of Kansas' workers' compensation law as a jurisdictional bar, meaning that Plaintiffs' claim against Wireless fails as a matter of law and that Wireless was fraudulently joined. Therefore, Union Pacific and Sabre argue that the Court should deny Plaintiffs' motion to remand the case.

## DISCUSSION

A defendant may remove an action from state court to federal court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441. In a civil action with multiple defendants, all defendants properly joined and served must join in or consent to the notice to remove, unless they are nominal defendants. *See Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002); 28 U.S.C. § 1446(b)(2)(A). However, a removing defendant is not required to obtain consent from a defendant sued under a fictitious name, such as the Doe Defendants here. *See Shannon v. GFK Custom Research LLC*, No. 4:13–CV–682 CAS, 2013 WL 2395009, at *3 (E.D. Mo. May 30, 2013).

For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1), there must be complete diversity of citizenship between the defendants and plaintiffs. "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Courts disregard the citizenship of defendants sued under fictitious names. *See Woodbury v. Courtyard Mgmt. Corp.*, No. 4:11–CV–1049 CEJ, 2012 WL 482344, at *2 (E.D. Mo. Feb. 14, 2012) (citing 28 U.S.C. § 1441(a)). An exception to the general requirement of complete diversity is that a district court can

8

retain jurisdiction where a non-diverse defendant has been fraudulently joined. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010).

Joinder is fraudulent where "a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." *Id.* at 620. A fraudulently joined defendant need not consent to removal, and its citizenship will not destroy the court's diversity jurisdiction. *See Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (explaining that a defendant's right to remove a diversity action cannot be defeated by the fraudulent joinder of a resident defendant); *Hemker v. St. Louis Science Ctr.*, No. 4:08-CV-00139 CEJ, 2008 WL 2020210, at *1 n.1 (E.D. Mo. May 8, 2008) ("Although removal generally requires the consent of all defendants, there is a judicially created exception for parties who are fraudulently joined . . . ."). It is undisputed that if Wireless was fraudulently joined, this case was properly removed pursuant to 28 U.S.C. § 1332(a).

In determining whether a defendant was fraudulently joined, the district court must decide "whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 811 (8th Cir. 2003). This question turns on whether the plaintiff might have a "colorable" claim against the resident defendant. *See Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010). If not, the joinder is fraudulent. *Id*. Additionally, joinder may be fraudulent where the plaintiff "has no real intention of prosecuting the action against the resident defendant." *Jameson v. Gough*, No. 4:09CV2021RWS, 2010 WL 716107, at *6 (E.D. Mo. Feb. 24, 2010) (citation omitted).

9

To determine whether Plaintiffs have a colorable claim against Wireless, the Court must first determine which state's law controls that claim. "In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008) (citation omitted). Therefore, the Court will apply Missouri's choice of law rules to determine whether Kansas or Missouri law applies here.

Count VI states a claim for an intentional tort resulting in wrongful death. Thus, Defendants are correct that the Court must apply Missouri's choice of law rules for tort claims. When determining choice of law issues, Missouri courts apply the "most significant relationship" test stated in the Restatement (Second) of Conflicts of Law. *See Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969). Under this approach, courts start with the presumption that the law of the state where the injury occurred controls, unless some other state has a more significant relationship to the occurrence and parties, in which case the law of that state applies. *See* Restatement (Second) of Conflicts of Law § 175 (1971); *Livingston v. Baxter Health Care Corp.*, 313 S.W.3d 717, 722 (Mo. Ct. App. 2010) (reiterating that only "exceptional circumstances" justify a "rare exception[]" to the "general rule" that the law of the state in which the injury occurred controls).

Therefore, the Court will begin with the presumption that the law of Kansas, as the state in which the injury occurred, will control Plaintiffs' claim against Wireless. The Court must next determine whether Missouri's relationship with the parties and events is more significant than those of Kansas so as to justify a departure from this general rule.

The Restatement's most significant relationship test for tort claims generally involves two steps. Section 145 directs courts to consider four contacts: (1) the place of the injury; (2) the place of misconduct; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered. Restatement (Second) of Conflicts of Law § 145(2) (1971). Considering these contacts, courts must then determine whether a state other than the place of injury has a more significant interest under the principles stated in Section 6, which include:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2).

Here, the place of injury was in Kansas; the place of Wireless' alleged misconduct was primarily in Kansas, where the work project and dangerous conditions were located; Plaintiffs are domiciled in Missouri, and Wireless was incorporated and operates principally in Missouri; and the employment relationship between decedent and Wireless was at least arguably centered in Missouri. In light of these contacts, the Court cannot find that Missouri has more significant contacts with this matter than Kansas. While Missouri certainly has an interest in employment relationships centered in Missouri between Missouri citizens, Kansas likely has a greater interest in conduct and injuries

occurring within its boundaries. *See Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 524 (8th Cir. 2003) (finding in a personal injury action that "Kansas has the greater governmental interest, because it has the prerogative of regulating conduct within its borders"). Moreover, the parties could justifiably expect for Kansas to hear any controversies arising from a workplace injury during a long-term project within that state. Indeed, it is for this reason that out-of-state employers are required to obtain separate insurance to cover any incidents which occur in the foreign jurisdiction. *See Beam v. Concord Hospitality, Inc.*, 873 F. Supp. 491, 497 (D. Kan. 1994) (finding that the "policy and purpose" of the requirements under Kansas' workers' compensation act is "to provide an established source of benefits to the employee for injuries arising out of and in the course of his employment, and to shift from the employee to the industry certain burdens incidental to modern industrial operations").

Finally, there is a strong intrastate interest in streamlining the choice of law analysis for employment-related injuries, as through the general rule that the law of the state in which the injury occurred should normally control. *See* Restatement (Second) of Conflicts of Law § 146 cmt. c (1971) (explaining that the general rule that the law of the state in which the injury occurred should control "furthers the choice-of-law values of certainty, predictability and uniformity of result and, since the state where the injury occurred will usually be readily ascertainable, of ease in the determination and application of the applicable law"). Although both states foreseeably have some interest in hearing Plaintiffs' claim, the Court finds that Kansas has the most significant relationship to Plaintiffs' tort claim against Wireless.

The result would be the same if the Court instead applied the similar test in Restatement Section 184, which applies specifically to workers' tort and wrongful death claims. Section 184 states in relevant part:

> Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which
>
> * * *
>
> *(b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred*, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local law governs the contract of employment under the rules of §§ 187- 188 and 196.

Restatement (Second) of Conflicts of Law § 184 (1971) (emphasis added). Though there is no evidence that Plaintiffs have obtained an award in Kansas, Kansas law makes clear that they could have done so. *See* Kan. Stat. Ann. § 44-510b (detailing the recovery available for the survivors of the family of any worker whose "death result[ed] from injury"); Kan. Stat. Ann. § 44-505(a) (stating that the provisions of Kansas' workers' compensation law "shall apply to all employments wherein employers employ employees within this state"). It further appears that the injury of decedent was a type of risk against which Wireless was required to obtain insurance in Kansas. *See* Kan. Stat. Ann. § 44-532(b) ("Every employer shall secure the payment of compensation to the employer's employees . . . (1) By insuring and keeping insured the payment of such compensation with an insurance carrier authorized to transact the business of workers compensation insurance in the state of Kansas."). Accordingly, Kansas law controls Plaintiffs' claim

13

against Wireless, and the claim is barred to the extent it would be so under Kansas law. *See Anderson v. Commerce Const. Servs., Inc.*, 531 F.3d 1190, 1197-98 (10th Cir. 2008) (finding that a worker's personal injury suit against his general contractor was barred, because Kansas law had the most significant relationship with the parties and the incident, where the injury occurred in Kansas).

Under Kansas law, Plaintiffs may only obtain recovery against the employer through the state's workers' compensation system. *See* Kan. Stat. Ann. § 44-501b(d) ("Except as provided in the workers compensation act, no employer . . . shall be liable for any injury . . . for which compensation is recoverable under the workers compensation act . . ."). This is true even if Plaintiffs have not obtained recovery in Kansas, as the relevant inquiry is whether they *could* have done so. *See Robinett v. Haskell Co.*, 12 P.3d 411, 414 (Kan. 2000) (explaining that, under Kansas' workers' compensation law, a worker may not maintain a tort action "against a party from whom he or she could have recovered compensation from that employer under the Act"). As explained above, Plaintiffs had the option to do so. Kansas law precludes Plaintiffs from obtaining any tort recovery against Wireless, even if their allegations regarding the conduct of Wireless are all true. *See Anderson*, 531 F.3d at 1197-98 (holding that under Kansas law, workers' compensation is the exclusive remedy for workplace injuries, and bars any tort recovery by an employee against his or her employer); *Beam*, 873 F. Supp. at 497-98 (same; clarifying that Kansas' workers' compensation exclusivity extends to intentional torts as well); *Lawrence v. Phillips Petroleum Co.*, 627 P.2d 1168, 1169 (Kan. Ct. App. 1981) (same).

Because there is no reasonable basis for predicting that Kansas law might impose liability on Wireless based upon the facts Plaintiffs allege, the Court finds that Wireless was fraudulently joined.[7] *See Polson v. Cottrell, Inc.*, No. 04-CV-822-DRH, 2005 WL 1168365, at *4-5 (S.D. Ill. May 17, 2005) (finding that an employer was fraudulently joined because the plaintiff's claims against it were barred by the exclusivity provision in Illinois' workers' compensation act). As such, the citizenship of Wireless is not considered in determining whether this Court has diversity jurisdiction, and the Court *sua sponte* dismisses the action against it for lack of subject matter jurisdiction. *See Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 896 (8th Cir. 2014) (explaining that the fraudulent joinder inquiry is "a jurisdictional one," and modifying the district court's dismissal of the claims against a fraudulently joined defendant to a dismissal without prejudice for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)); *Block v. Toyota Motor Corp.*, 665 F.3d 944, 951 (8th Cir. 2011) (holding that a district court did not abuse its discretion by denying a motion to remand and dismissing a non-diverse defendant upon finding that it was fraudulently joined); *Wichmann v. Proctor & Gamble Mfg. Co.*, No. 4:05CV1095 HEA, 2005 WL 2176922, at *3 (E.D. Mo. Sept. 8, 2005) (dismissing claims against a fraudulently joined defendant *sua sponte*). The sole non-

---

[7] The Court also notes that it has been several months since Wireless was served in this matter, and that, despite Wireless's failure to appear in its own defense, Plaintiffs have not moved for an entry of default judgment against it. Consequently, it appears that Plaintiffs may never have had a good faith intention to prosecute their claim against Wireless, which further supports a finding of fraudulent joinder. *See Jameson*, 2010 WL 716107, at *6.

diverse Defendant being dismissed from this action, Plaintiffs' motion to remand will be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Plaintiffs to remand this case to state court is **DENIED**. (Doc. No. 13.)

**IT IS FURTHER ORDERED** that Plaintiffs' claim against Wireless Horizon, Inc. is hereby **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the motion of Union Pacific Railroad Company for leave to conduct jurisdictional discovery is **DENIED as moot**. (Doc. No. 18.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of November, 2015.